UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
SEAN EARLEY,

                              Petitioner,        **REPORT AND**
                                                                   **RECOMMENDATION**

              v.                                                      CV 03-3104 (ERK) (VVP)

TIMOTHY MURRAY,

                              Respondent.
----------------------------------------------------------------x
POHORELSKY, Magistrate Judge:

      Judge Korman has referred this matter to me to conduct a factual hearing on the question whether the instant petition for a writ of habeas corpus was timely filed, and to issue a Report and Recommendation pursuant to 28 U.S.C § 636(b)(1). Since the Second Circuit has already found that the petition warrants habeas relief on its merits, a finding of timeliness will require that the petition be granted. As more fully explained below, the facts adduced at the hearing establish that the petition was filed timely, and the undersigned therefore respectfully recommends that the petition be GRANTED.

## BACKGROUND

      In an opinion dated June 9, 2006, the Second Circuit held that the State violated the petitioner Sean Earley's constitutional rights by "administratively adding" a five-year period of post-release supervision ("PRS") to his judicially-imposed sentence of six years incarceration. *See generally Earley v. Murray* (*Earley I*), 451 F.3d 71 (2d Cir.), *reh'g denied*, 462 F.3d 147 (2d Cir. 2006). It thereafter vacated an earlier order of this court denying Earley's petition and remanded the matter for a timeliness inquiry.[1] *Id.* at 76. As the facts underlying the Second

---

[1] In an opinion dated August 31, 2006, the Second Circuit denied the respondent's petition for a rehearing on the same grounds as those cited in its initial opinion. *See Earley v. Murrary* (*Earley II*), 462 F.3d 147, 148 (2d Cir. 2006) ("Upon review, we adhere to our view that the inclusion of a five-year

Circuit's holding that Earley's sentence was unconstitutionally altered are relevant to the timeliness inquiry, they are briefly recounted here.

In February 2000, Earley pleaded guilty to attempted burglary in the second degree. As part of a plea agreement with prosecutors, Earley was promised a sentence of six years incarceration. At sentencing, the state court judge imposed upon Earley the agreed-upon six year sentence, but did not include in his pronouncement any reference to a term of post-release supervision.[2] A subsequent written commitment order issued by the court clerk similarly contained no reference to PRS. *Earley I*, 451 F.3d at 73.

In early October 2001, Earley became concerned when he heard rumors from fellow inmates that officials at the Department of Correctional Services ("DOCS") were unilaterally altering sentences of other prisoners to include PRS terms. He then sought to obtain transcripts of his plea and sentencing proceedings, as well as other documentation concerning his sentence.

---

period of PRS in Earley's sentence when that PRS was not included in the sentence imposed at Earley's sentencing hearing violated his rights under the Due Process Clause of the United States Constitution.").

[2]The Second Circuit's opinion stated that no discussion about PRS had taken place during plea negotiations and sentencing because "Earley, his counsel, the prosecutor, and the judge were not aware of" the relatively new law which had established the PRS regime. *Id*. As revealed during the factual hearing, however, this fact proved to be a faulty assumption, based on misleading submissions by Earley. Thus, as to the asserted lack of knowledge of the PRS requirement, Earley's former counsel testified at the hearing that she was well aware of the statute (which by then was more than a year old) and that it was her usual practice to discuss the PRS requirement with her clients. (Hr'g Tr. 105:17-25, Feb. 26, 2007.) The Second Circuit's mistaken assumption concerning that fact appears to have stemmed from an affidavit Earley had asked his attorney to sign – she never did – but which he nevertheless included as an exhibit in his habeas petition. (*See* Earley's Habeas Pet. Martin Aff. Ex. N ¶ 7, *available at* docket entry no. 1; *see also* Respt.'s Exs. A, B.) The affidavit and the letters accompanying it in Earley's habeas petition create the implication that Earley's attorney agreed that she never discussed PRS with the petitioner. (*See id.*) What Earley did not include in the petition, but which he acknowledged having received well before he filed it, was a letter written to him by his attorney in October 2002 advising Earley that she could not sign the affidavit because she could not "truthfully assert" that she had not advised Earley about PRS. (*See* Hr'g Tr. 72:12-21; Letter from Margaret Martin, Legal Aid Society, to Sean Earley (Oct. 1, 2002), Respt.'s Ex. F.)

-2-

Sometime in February 2002, Earley apparently "received confirmation" that his sentence had been altered with a PRS term. A subsequent review of the transcripts confirmed for Earley that a PRS term was not included in the original sentence imposed upon him by the judge. *Earley I*, 451 F.3d at 73.

At that point, Earley proceeded to exhaust his administrative remedies in what ultimately became a failed effort to remove the PRS term from his sentence. He then filed a state court motion to vacate his sentence under section 440.20 of New York's Criminal Procedure Law sometime in mid-July 2002.[3] In the motion, Earley argued, among other things, that the State violated his constitutional due process rights by altering his sentence to include the PRS term and that his attorney rendered ineffective assistance. The state trial court denied Earley's section 440.20 motion, and the appellate division denied leave to appeal. Earley then instituted the present habeas matter in mid-June 2003, raising the same due process and ineffective assistance claims. *Earley I*, 451 F.3d at 73.[4]

## DISCUSSION

### I. The Statute of Limitations

#### A. The Legal Standard – In General

A one-year statute of limitations applies to habeas petitions filed by prisoners in State custody. *See* 28 U.S.C. § 2244(d)(1) ("A 1-year period of limitation shall apply to an application

---

[3]Section 440.20(1) provides, in pertinent part, "At any time after the entry of a judgment, the court in which the judgment was entered may, upon motion of the defendant, set aside the sentence upon the ground that it was unauthorized, illegally imposed or otherwise invalid as a matter of law."

[4]Earley had proceeded *pro se* when the habeas petition was filed but was represented by David Samel, Esq. on his appeal to the Second Circuit. Mr. Samel has continued representing Earley in the proceedings before this court.

for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court."). There are four so-called triggering dates from which the one-year limitations period can run. *See generally id.* § 2244(d)(1)(A)-(D). The parties agree that the triggering date found in subsection (D) governs here. Under that provision the limitations period begins to run on "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." *Id.* § 2244(d)(1)(D). Courts have found that this date is triggered once "a petitioner is on *notice* of the facts which would support a claim, not [when] the petitioner has in his possession evidence to support his claim." *Rodriguez v. People of the State of New York*, No. 01 Civ. 9374, 2003 WL 289598, at *15 (S.D.N.Y. Feb. 11, 2003) (Peck, Mag. J.) (collecting cases) (emphasis added); *see also Jackson v. Hofbauer*, No. 05-CV-74916, 2007 WL 391405, at *8 (E.D. Mich. Jan. 31, 2007) ("[T]he operative inquiry is whether the facts themselves, rather than the legal import or evidence supporting them, could not have been discovered through the exercise of reasonable diligence.") (citations omitted). Since this is an objective test, factors such as "the petitioner's intelligence, education, language skills, or mental stability," are not taken into account. *Rodriguez*, 2003 WL 289598, at *17 (citing *Owens v. Boyd*, 235 F.3d 356, 359 (7th Cir. 2000)). The petitioner bears the burden of establishing entitlement to the factual predicate date, which, as interpreted by one court, requires that the petitioner prove "why he was unable to discover the factual predicate of his claim before the date asserted." *Yekimoff v. New York State Division of Parole*, No. 02 CIV 8710, 2004 WL 1542256, at *5 (S.D.N.Y. July 8, 2004) (citations omitted); *see also Shabazz v. Filion*, No. 02-CV-939, 2006 WL 2792741, at *5 (N.D.N.Y. Sept. 26, 2006) ("[C]ourts addressing the relative burdens under § 2244(d)(1)(D) have concluded that the petitioner bears the burden of persuading the

court that he exercised due diligence in discovering the factual predicate of his habeas claim.") (citations omitted); *Brooks v. McKee*, 307 F. Supp. 2d 902, 906 (E.D. Mich. 2004) ("A habeas petitioner has the burden of persuading a federal court that he exercised due diligence in discovering the factual predicate of his habeas claims.") (citation omitted).

Once the factual predicate date is established, the habeas application must be filed within one year of that date, subject to any tolling while motions for collateral relief are pending or for other reasons. *See* 28 U.S.C. § 2244(d)(2); *Rodriguez*, 2003 WL 289598, at *12.

### B. The "Factual Predicate" for Earley's Claim

As the "factual predicate date" is essential to establishing the limitations period, the court turns to a consideration of what would constitute the "factual predicate" for an unconstitutional sentence claim of the type asserted here. The Second Circuit's opinions in this case, which this court is bound to follow upon remand,[5] provide the starting point. *Earley I* and *II* stand for the simple and unequivocal proposition that "the only sentence known to the law is the sentence imposed by the judge; any additional penalty added to that sentence by another authority is invalid regardless of its source, origin, or authority until the judge personally amends the sentence." *Earley II*, 462 F.3d at 149; *see also Earley I*, 451 F.3d at 75 ("The only cognizable sentence is the one imposed by the judge. Any alteration of that sentence, unless made by a

---

[5]As explained by the Circuit itself,

"[W]here a case has been decided by an appellate court and remanded, the court to which it is remanded must proceed in accordance with the mandate and such law of the case as was established by the appellate court . . . . Where issues have been explicitly or *implicitly* decided on appeal . . . the district court on remand [must] follow the decision of the court of appeals."

*Kerman v. City of New York*, 374 F.3d 93, 109-10 (2d Cir. 2004) (internal quotation marks and citations omitted).

judge in a subsequent proceeding, is of no effect."). The factual predicate for an *Earley*-type

claim, i.e., one that attacks a sentence as unconstitutionally altered, must therefore rest on some

fact or group of facts that would put a petitioner on notice that the sentence he will be required to

serve is different from the one that was imposed upon him by the sentencing judge.[6]

## II.     The Hearing

### A.     The Evidence

Much of the evidence at the hearing was either undisputed or not contested. Thus, the

following facts are not in dispute. First, no discussion about PRS ever took place during the plea

and sentencing proceedings. (Hr'g Tr. 13:18-24.)[7] Second, the written commitment order issued

by the clerk also contained no reference to PRS. (Hr'g Tr. 13:7-17; Sentence and Order of

Commitment, Feb. 29, 2000, Petr.'s Ex. 1.)  Third, at some point after the written commitment

order was issued, the Department of Correctional Services ("DOCS") made computations which

required that Earley serve a PRS term despite its complete absence from the judicially-imposed

sentence. Fourth, Earley did not receive a copy of the DOCS computations reflecting his PRS

term until early-February 2002 when he requested and received several documents from his

facility's "inmate records coordinator," including the original written commitment order and a

computer-generated "legal date computation" sheet. (Hr'g Tr. 27:17-25.)

---

[6]The respondent does not seem to dispute this, at least insofar as the requirement that a petitioner obtain some notice of his administratively altered sentence before a factual predicate to an *Earley*-type claim will arise. What the respondent takes issue with are the facts which constitute such notice, and, by extension, the time in which such notice can be discovered, contentions the court will address below.

[7]Aside from a six-year period of incarceration, the only other terms included in the judge's pronouncement of sentence was a "mandatory surcharge"and "crime victim assistance fee." (Sentencing Proceeding Tr. 2:18-25, Feb. 29, 2000, Petr.'s Ex. 6.)

What is sharply disputed between the parties is when Earley knew or should have known that his sentence included a PRS term regardless of what the sentencing judge said when passing sentence. The respondent offered the testimony of the attorney who represented Earley at the time of his plea and sentence, Margaret Martin, in an effort to demonstrate that Earley knew about PRS at the time of sentencing. Ms. Martin testified that she and her Legal Aid colleagues were well aware of the PRS provision that had been added to the law with respect to determinate terms like the one that would be imposed on Earley. (*See id*. at 131:1-14.)[8] Before advising clients to plead guilty it was her "routine practice" to discuss with them the sentence they would face, which generally included information about PRS. (*Id.* at 105:17-21.) She could not specifically recall, however, whether she had had such a discussion with Earley. (*Id.* at 105:21-22.)[9] Based on Ms. Martin's testimony, the respondent contends that Earley knew, at the very least, of the likelihood that his sentence included a PRS term, and that he therefore with due diligence could have learned about its application to his sentence at or shortly after the date of his sentencing in February 2000.

---

[8]That provision was part of a larger legislative measure entitled "Jenna's Law." *See People v. Catu*, 4 N.Y.3d 242, 244 (2005). Shortly after the passage of Jenna's Law in August 1998, an informational memorandum was circulated among Legal Aid staff, including Ms. Martin, describing its various provisions including the one regarding PRS terms. (Memorandum from Susan Hendricks, Special Litigation Unit, Legal Aid Society, to all CDD [Criminal Defense Division] Legal Staff 2-4 (Aug. 20, 1998), Respt.'s Ex. H.) Ms. Martin testified that while she could not specifically recall reading the memo, she remembered learning about the PRS provision around the time the memo was issued. (*See* Hr'g Tr. 103:22-104:6.)

[9]Although not raised by the respondent, an argument can be made that any knowledge Ms. Martin had about PRS, even if never expressly transmitted, may be imputed to Earley under traditional principles of agency. *See Veal v. Geraci*, 23 F.3d 722, 725 (2d Cir. 1994). The issue need not be decided, however, because as demonstrated below the answer ultimately has no bearing on the timeliness inquiry. *See* discussion *infra* pp. 9-11.

Earley, on the other hand, testified that his attorney never talked to him about PRS, and that he only learned of its existence on October 5, 2001, after overhearing rumors from fellow inmates about PRS being added to some sentences. (Hr'g Tr. 25:3-26:1.) Earley further testified that he did not learn of PRS with respect to his own sentence until February 2002 when he received the above-described documents from the inmate records coordinator. It was only after studying the documents and noticing a "cryptic" "PRS 05 00 00" code on the time computation sheet[10] that he came to realize he would be serving a term of post-release supervision as part of his own sentence. (Hr'g Tr. 30:18-31:4.)[11]

The resolution of this factual contention is complicated by what, in this court's view, is Earley's questionable credibility. As noted above, Earley had already succeeded on some level, through a less-than-complete habeas application, in misleading the Second Circuit to conclude that his attorney did not know of the law governing PRS at the time Earley was sentenced when in fact she did. *See supra* note 2.[12] Earley's credibility is further undermined by his

---

[10]The time-computation sheet has a two-column format in which various dates and time calculations relating to Earley's sentence are specified. (Document entitled "Legal Date Computation," Petr.'s Ex. 2.) The PRS-code is indicated in the last line of the first column. The document also contains the date "02/07/02" in the upper-lefthand corner, first line, and a "COMP DATE: 05/06/2000" notation in the upper-righthand corner, second line. (*Id.*)

[11]Earley testified that he subsequently obtained a transcript of his sentencing proceeding in March 2002 and one for his guilty plea proceeding in June 2002. (*Id.* at 36:3-11.) The June 2002 date appears incorrect since Earley acknowledged possession of both transcripts as early as April 2002 when he wrote a letter to the inmate records coordinator seeking to "correct" his records to reflect only the six-year sentence. (Letter Mot. to Correct Records Pursuant to 7 NYCRR 5.50, to Roxanne Underwood, Inmate Records Office, Apr. 14, 2002, Petr.'s Ex. 3.)

[12]This issue was explored in greater detail in post-hearing letters submitted by the parties with counsel for Earley reiterating his client's explanation that he decided not to include the additional correspondence because he did not want to "muddy the waters," and counsel for the respondent arguing that this omission, when examined against the rest of his habeas submission, should be viewed as a conscious attempt to mislead the court. (*See* docket entry nos. 32-33.)

acknowledgment during the hearing that he is the subject of seven prior burglary convictions. (Hr'g Tr. 84:3-20.) *See Jones v. City of New York*, No. 98 CIV 6493, 2002 WL 207008, at *2 (S.D.N.Y. Feb. 11, 2002) (Sand, J.) ("Courts in the Second Circuit have held that convictions for burglary . . . is [sic] appropriate to evaluate a witness' truthfulness.") (citations omitted). The court, however, need not make a credibility determination, nor need it resolve the issue of whether Earley had in fact been advised by Ms. Martin about PRS prior to sentencing. Even if the court were to accept the respondent's position that Earley did have prior knowledge of PRS, such knowledge, as the Second Circuit's opinions in this matter make clear, is ultimately irrelevant to the factual predicate determination.

If nothing else, *Earley I* and *II* teach us that it is the sentence, as announced by the judge, that controls, and that any penalty added to that sentence, if not added judicially, is a "nullity." *Earley I*, 451 F.3d at 76. Underlying this principle is the importance of finality and certainty associated with a judicially-imposed sentence. *Id.* at 75 ("Only the judgment of a court, as expressed through the sentence imposed by a judge, has the power to constrain a person's liberty.") (citing *Hill v. United States ex rel. Wampler*, 298 U.S. 460, 464 (1936) (Cardozo, J.) (unanimous opinion)). It follows then that a criminal defendant has the right to reasonably rely on a judicially-imposed sentence as *the* sentence he will have to serve, regardless of knowledge imparted to him by his attorney, or any other source, about what that sentence *might* include. *Cf. United States v. Marquez*, 506 F.2d 620, 622 (2d Cir. 1974) ("It is the oral sentence which constitutes the judgment of the court, and which is authority for the execution of the court's sentence. The written commitment is "mere evidence of such authority.") (internal quotation marks and citations omitted). Prohibiting such reliance would, at the very least, cast a cloud of

uncertainty over a judicially-imposed sentence – a result that, without question, runs counter to the principles of *Earley I* and *II*. Thus, when Earley received a sentence of six years incarceration by the judge it was only that sentence Earley should have been expected to rely upon. Any extraneous knowledge he might have had about PRS terms – whether such knowledge came from a discussion with Ms. Martin or from reading the latest compilation of New York's Penal Law – is, for factual predicate purposes, equivalent to no knowledge at all. *Earley* requires as much.

For much the same reason, even if Earley had been informed of PRS by his attorney, the court must reject the respondent's argument that due diligence required Earley to inquire about whether he was required to serve such a term even though the judge had not imposed it. The respondent's argument would place Earley in the entirely ridiculous position of having to challenge his sentence, not to shorten it but to lengthen it, and all because the judge erred by not incorporating the PRS term into his pronouncement. Such a result flouts conventional wisdom; nor can it be supported under the law. As the Second Circuit pointed out, an unlawfully lenient sentence may be corrected under section 440.40 of New York's Criminal Procedure Law, which requires that "*the state* move to have the offending sentence vacated and the defendant resentenced by a judge." *Earley I*, 451 F.3d at 76 (citing N.Y. Crim. Proc. Law § 440.40(1)) (emphasis added).[13] If the State errs, it has a remedy. The respondent cannot turn section 440.40 on its head by hoisting upon Earley a duty to correct the State's error to his own detriment.

---

[13]Section 440.40(1) provides, in pertinent part, that "[a]t any time not more than one year after the entry of a judgment, the court in which it was entered may, upon motion of the people, set aside the sentence upon the ground that it was invalid as a matter of law." N.Y. Crim. Proc. Law § 440.40(1).

At the close of the hearing, the respondent seemed to argue that Ms. Martin was an agent of the State for purposes of providing Earley information about his sentence; thus, if in fact she did inform Earley about PRS, he then would have received some form of *official* notice for factual predicate purposes. The court, however has found no support for this proposition. In any event, even if, for the sake of argument, the information Ms. Martin provided to Earley constituted some sort of official notice for factual predicate purposes, neither Ms. Martin, nor any other attorney for that matter, had any authority to alter a judicially-imposed sentence. *See Earley I*, 451 F.3d at 75. Thus, after hearing from a state court judge that his sentence did not include a PRS term, a reasonably diligent petitioner in Earley's position is entitled to accept the status quo, which he has a right to do under *Earley I* and *II*, rather than make any inquiry and risk having the sentence prolonged. Or, put another way, a sentenced defendant has no "due diligence" duty to inquire whether additional, undisclosed penalties may attend his sentence until he becomes aware of *new* facts, after his sentencing, that suggest that his sentence may have been altered.

### B. Fixing the Factual Predicate Date for Earley's Claim

The question that must then be answered is when, for factual predicate purposes, would it have been unjustified for Earley to continue relying on the judge's sentence, or, put another way, when Earley, exercising reasonable diligence, could have discovered that the judge's sentence had in fact been changed. It bears emphasizing that the key phrase here is "could have," since the date on which the factual predicate was *actually* discovered has no bearing on the factual predicate date. As the Fifth Circuit has explained, "[s]ection 2244(d)(1)(D) does not convey a statutory right to an extended delay . . . while a habeas petitioner gathers every possible scrap of

evidence that might, by negative implication, support his claim." *Flanagan v. Johnson*, 154 F.3d 196, 199 (5th Cir. 1998). Rather, the determinative factor is the earliest period in which the factual predicate could have been discovered by a reasonably diligent petitioner. *Adams v. Greiner*, 272 F. Supp. 2d 269, 274 (S.D.N.Y. 2003) ("[W]hen evidence is newly obtained, but could have been obtained earlier [through the exercise of due diligence], the date when the evidence was actually obtained has no effect on the [section 2244] limitation period.") (internal quotation marks and citations omitted).

A fair reading of the factual record fixes this date sometime between October 5, 2001 and February 2002.[14] The respondent offered no evidence to refute Earley's testimony that he first overheard rumors about PRS terms being added to sentences on October 5, 2001. It is also undisputed that Earley first received notification that his own sentence had been altered with PRS in February 2002. Having established these two dates the court is hard pressed to see how, even if a reasonably diligent petitioner in Earley's position could have discovered the factual date before February 2002,[15] he could have done so before October 5, 2001, a date that the parties agree would bring the petition within the limitations period under section 2244(d)(1)(D).

---

[14]The court need not determine when specifically during this period the factual predicate could have been reasonably discovered since, as will be demonstrated below, the instant petition would be timely with a factual predicate date falling anytime within that period. *See infra* Part II.C.

[15]For example, Earley testified that after overhearing the rumors about PRS on October 5, 2001 he made the prison law library a "regular hangout" and shared strategies with other inmates as to mounting a legal challenge to administratively altered sentences. (*See* Hr'g Tr. 31:8-12.) It is therefore difficult to believe that during these brainstorming sessions with other inmates, Earley could not have discovered that a document such as the computerized time computation sheet was obtainable through the inmate records coordinator, a position that Earley testified existed in "[e]very facility." (*Id*. at 28:5-6.) There is also evidence in the record that suggests the time computation sheet was received by Earley only four days after he had requested it from the facility's "inmate records coordinator," *see infra* note 16, thus negating any potential contention that the delay till February 2002 could have been a product of processing time.

To be sure, the record bears scant evidence of what Earley did (besides sending letters, copies of which were never produced, and conducting research at the prison law library) or could have done between October 2001 and February 2002 to investigate his claim. Furthermore, much if not all of the evidence upon which the factual predicate date rests is based on Earley's testimony whose credibility, as indicated above, is questionable at best. Nevertheless, the record is simply devoid of any new facts, post-sentencing and prior to October 5, 2001, that would have placed Earley on notice of the possibility that a PRS term had been added to his sentence. Of course, the October 5, 2001 date is the product solely of Earley's testimony.[16] The respondent, however, has done nothing to dispute it, either on cross-examination or by offering his own evidence as to the relevant prison environment at that time; for example, whether rumors about DOCS and PRS were swirling before the October 5th date. And, short of discrediting Earley's testimony entirely, which this court is not inclined to do, the inescapable conclusion is that the factual predicate falls sometime between October 5, 2001 and February 2002 – that is, based on the present record, a reasonably diligent petitioner in Earley's position might have discovered that his sentence had been altered between October 5, 2001 and February 2002, but not earlier.

### C. The Timeliness of Earley's Habeas Petition Based on a Factual Predicate Date Between October 5, 2001 to February 2002

Counsel for both Earley and the respondent agree that the instant petition would be timely if the factual predicate date falls after October 5, 2001. (Hr'g Tr. 18:18-22.) Since the

---

[16]The February 2002 date, on the other hand, does receive some support outside of Earley's testimony; namely from an April 14, 2002 letter written by Earley in which he acknowledged receiving the time computation sheet on February 6, 2002 in response to a February 4th request, (Letter Mot. to Correct Records Pursuant to 7 NYCRR 5.50, to Roxanne Underwood, Inmate Records Office, Apr. 14, 2002, Petr.'s Ex. 3), and from the time computation sheet itself which seems to bear a date of February 7, 2002, *see supra* note 10 and accompanying text.

court has found that the factual predicate date falls sometime between October 5, 2001 and February 2002, the petition should be deemed timely. For the sake of completeness and to facilitate any further judicial review, however, the court will set forth specifically how a petition that was filed in June 2003 is timely with a factual predicate date as defined above.

As a reminder, Earley's petition must have been filed within one year of the factual predicate date to be considered timely. *See* 28 U.S.C. § 2244(d)(1). That one-year period rarely runs without interruption, however, since time within that period is often tolled for pending state court motions and other considerations. *See, e.g.*, *id.* § 2244(d)(2) ("The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."). Without tolling, a period of one year would have elapsed after the court's earliest factual predicate date of October 5, 2001 and before the time the instant habeas application was filed in mid-June 2003. Earley must therefore establish entitlement to some period of tolling to avoid having the petition rejected as untimely. Two such tolling periods are potentially at issue here, one being the time Earley spent exhausting his administrative remedies,[17] the other being the period when his section 440.20 motion was pending in state court. The court considers the latter period first.

The law in this circuit is clear that a motion to vacate sentence pursuant to section 440.20 of New York's Criminal Procedure Law tolls the one-year statute of limitations. *See, e.g.*, *Latif v. Portuendo*, No. 97 CV 4527, 1998 WL 199846, at *2 (E.D.N.Y. Mar. 16, 1998) (citing

---

[17]Before filing his section 440.20 motion challenging his PRS term, Earley first sought to have the term eliminated by filing a grievance with DOCS. (*See* Hr'g Tr. 31:15-35:16.)

*Hughes v. Irwin*, 967 F.Supp. 775, 779 (E.D.N.Y.1997)); *Samuels v. Artuz*, No. CV-97-2928, 1997 WL 803772, at *2 (E.D.N.Y. Dec. 5, 1997) ("[P]etitioner filed a motion to set aside his sentence pursuant to [section] 440.20 . . . once again tolling the one-year limitations period."). Here, Earley mailed his section 440.20 motion on July 11, 2002, which the court considers the filing date for statute of limitations purposes.[18] (Hr'g Tr. 38:14-22.) The Kings County Supreme Court denied the section 440.20 motion on March 4, 2003. (Memorandum, *People of the State of New York v. Earley*, Ind. No. 6183-1999, Mar. 4, 2003, Petr.'s Ex. 8.). Earley then promptly sought leave to appeal the Supreme Court's decision in an application dated March 16, 2003, which the Appellate Division denied on May 19, 2003. (*See* Notice of Leave to Appeal, *People of the State of New York v. Earley*, Ind. No. 6183-1999, Mar. 16, 2003, Petr.'s Ex. 9; Decision & Order, *People of the State of New York v. Earley*, Ind. No. 6183/99, May 19, 2003, Petr.'s Ex. 10.) Earley's section 440.20 motion was thus pending in the state courts for 312 days, during which the statute of limitations was tolled.[19] There is little question then that the

---

[18]The Second Circuit, in *Fernandez v. Artuz*, extended the so-called "prison mailbox rule" to *pro se* state court petitions for collateral relief, concluding that such applications are deemed filed for section 2244 timeliness purposes when "deliver[ed] to prison authorities for forwarding to the district court." 402 F.3d 111, 113, 116 (2d Cir. 2005) (citing *Houston v. Lack*, 487 U.S. 266, 270 (1988)). While there was some dispute at the hearing as to whether Earley had in fact submitted his 440.20 motion for mailing on July 11, 2002 as he contends he did (*see* Hr'g Tr. 38:14-39:25), this issue is ultimately immaterial to the court's timeliness determination. The filing date advocated by the respondent, July 23, 2002, even if accepted by this court, would not alter its conclusion that the petition is timely. Furthermore, in sufficiently analogous situations where it is unclear when a *pro se habeas* petition is filed for purposes of the prison mailbox rule, courts assume such petitions are filed on the day they are signed and dated, *see, e.g.*, *Lu v. Phillips*, No. 03-CV-2558, 2005 WL 1889461, at *1 (E.D.N.Y. Aug. 4, 2005) (citing *Adeline v. Stinson*, 206 F.3d 249, 251 n.1 (2d Cir. 2000)), which, for Earley, would be the July 11th date (440.20 Mot. to Vacate Sentence 1, 21, July 11, 2002, Petr.'s Ex. 7).

[19]This period also includes the 12-day interval between the Supreme Court's March 4th decision and Earley's March 16th application for leave to appeal. *See Carey v. Saffold*, 536 U.S. 214, 220-21 (2002) (defining "pending" under section 2244(d)(2) "to cover the time between a lower state court's decision and the filing of a notice of appeal to a higher state court " for collateral review); *accord McDonald v. Smith*, No. 02-CV-6743, 2003 WL 22284131, at *4 (E.D.N.Y. Aug. 21, 2003) (Weinstein,

instant petition is timely since, working backwards, this 312-day toll together with the one-year limitations period places the cut-off date – that is, the earliest possible date on which the factual predicate date can be fixed without running afoul of the statute – in early-August 2001, well before the court's earliest factual predicate date of October 5, 2001.[20] Having found the petition timely, the court need not conduct a separate tolling analysis for the period during which Earley exhausted his administrative remedies.

## CONCLUSION

For the foregoing reasons, I find that the petition for a writ of habeas corpus was timely filed, and therefore recommend that the petition be granted.

\*　　　　\*　　　　\*　　　　\*　　　　\*　　　　\*　　　　\*

Any objections to the Report and Recommendation above must be filed with the Clerk of the Court with a copy to the undersigned within 10 days of receipt of this report. Failure to file objections within the specified time waives the right to appeal any judgment or order entered by the District Court in reliance on this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 155, 106 S.Ct. 466, 474, 88 L.Ed.2d 435 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298 (2d Cir. 1992), *cert. denied*, 113 S. Ct. 825 (1992); *Small v. Secretary of Health and Human Serv.*, 892 F.2d 15, 16 (2d Cir. 1989) (per curiam).

---

J.) (citation omitted).

[20]This August 2001 cut-off date is arrived at by going back one year from June 17, 2003, the date the instant petition was filed, *see Noble v. Kelly*, 246 F.3d 93, 97-98 (2d Cir. 2001); *Lu v. Phillips*, 2005 WL 1889461, at \*1 (citation omitted), and then going back from that date an additional 312 days to account for the time tolled during which the section 440.20 motion was pending.

_Viktor V. Pohorelsky_
VIKTOR V. POHORELSKY
United States Magistrate Judge

Dated: Brooklyn, New York
      March 14, 2007